STATE EX REL. LIVESAY, RELATOR, *v.* SMITH, APPELLANT.

(No. 2,424.)

(Submitted June 15, 1907. Decided June 24, 1907.)

[90 Pac. 750.]

*New Counties—Clerks of District Court—Term of Office—Statutes—Constitution—Elections—Quo Warranto.*

1. Section 18, Article VIII, of the Constitution provides that the clerk of the district court shall be elected at the same time and for the same term as the district judge. Section 12 of the same Article declares that the term of office of the judge of the district court shall be four years. The Act creating Sanders county (Sess. Laws, 1905, p. 18) provided that the persons appointed to fill the various county offices should hold such offices until after the next general election, etc. Although in his proclamation for the general election held in November 1906, the governor did not call for the election of a clerk of the district court, the relator was nominated for that office by a political convention, received the highest number of votes and a certificate of election was issued to him. In a *quo warranto* proceeding the person holding the office under the Act creating Sanders county was ousted, and the relator declared entitled to it. *Held,* that the district court erred in entering judgment for relator, in that the words ''next general election,'' as used in the Act creating the new county, with reference to the office of clerk of the district court, mean the next general election for filling that particular office in the judicial district, and not the next general election held for any purpose.

*Appeal from District Court, Sanders County; F. C. Webster, Judge.*

*Quo warranto* by the state on the relation of Corbie Livesay against L. E. Smith. From a judgment for relator, defendant appeals. Reversed and remanded.

*Messrs. Wallace & Donnelly, Mr. H. H. Parsons,* and *Mr. H. J. Burleigh,* for Appellant.

Citing: *Matthewson* v. *County Commissioners,* 34 Kan. 607, 9 Pac. 769; *State* v. *Collins,* 2 Nev. 351; *State* v. *Philips,* 30 Fla. 579, 11 South. 922; *People* v. *Wilson,* 72 N. C. 157; *People* v. *Coll,* 132 Cal. 334, 64 Pac. 477; *People* v. *Hardy,* 8 Utah, 73, 29 Pac. 1118; *State* v. *Gardiner,* 3 S. Dak. 553, 54 N. W. 606; Mechem on Public Officers, sec. 174; *Kenfield* v. *Irwin,* 52 Cal. 164; *People* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754; *State ex rel. Breen* v. *Toole,* 32 Mont. 4, 79 Pac. 403; *George* v. *Oxford,* 16 Kan. 80.

*Messrs. Hall & Patterson,* for Respondent.

Citing: *People* v. *Hurlbut,* 24 Mich. 44, 9 Am. Rep. 103; *State ex rel. Williams* v. *Mayhew,* 21 Mont. 93, 52 Pac. 981; *State* v. *Foster,* 36 Kan. 504, 13 Pac. 842; *People* v. *Budd,* 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46; *Haggerty* v. *Arnold,* 13 Kan. 367.

MR. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment of the district court for Sanders county, in a *quo warranto* proceeding, ousting the appellant from the office of clerk of the district court of that county and declaring the relator entitled to the same.

The facts, as disclosed by the pleadings, upon which judgment was rendered, are as follows: By an Act of the ninth legislative assembly (Laws, 1905, p. 18) the county of Sanders was created, its boundaries defined, and its organization and government provided for. Certain persons were by the Act appointed to fill the various county offices. The appellant was

named as clerk of the district court. He duly qualified for the office, and held the same until ousted in this proceeding. In his proclamation for the general election to be held in November, 1906, the governor did not mention, or call for the election of a clerk of the district court. However, the relator was regularly nominated for that office by a political convention, received the highest number of votes cast, and a certificate of election was issued to him. Appellant contends that the district court erred in ordering a judgment in favor of the relator.

Section 10 of the Act creating Sanders county reads, in part, as follows: "All of said officers shall have power and perform the same duties, and be entitled to the same privileges, as are by law conferred upon like officers in other counties, and shall hold their respective offices until after the next general election, or until their successors are duly elected and qualified. * * * "

The main question to be decided here is: What is the meaning of the phrase "the next general election," as employed in this Act? Respondent contends that it means the next general election held for any purpose, while appellant's claim is that it means the next general election at which a clerk of the district court would be elected in conformity with established law.

It is conceded by appellant, and, indeed, has been directly decided by this court in *State ex rel. Williams* v. *Mayhew*, 21 Mont. 93, 52 Pac. 981, and in *In re Terrett*, 34 Mont. 325, 86 Pac. 266, that the legislature has power to fill provisionally the offices which it creates, not otherwise provided for in the Constitution. Appellant also concedes the power of the legislature to make an appointment for any number of months up to the first Monday in January following the regular election for the particular office in question.

Section 18, Article VIII, of the Constitution, provides as follows: "The clerk [of the district court] shall be elected at the same time and for the same term as the district judge." Section 12 of the same Article provides: "The state shall be di-

vided into judicial districts, in each of which there shall be elected by the electors thereof one judge of the district court, whose term of office shall be four years, except that the district judges first elected shall hold their offices only until the general election in the year one thousand eight hundred and ninety-two (1892), and until their successors are elected and qualified.''

The relator relies upon the case of *State ex rel. Williams* v. *Mayhew, supra,* and it was stated on the argument that the judge of the district court of Sanders county felt bound by that case as decisive of this one. In that case, after discussing those matters of law hereinbefore referred to as conceded by appellant, this court said: ''We think, therefore, that the legislature had the power to fill provisionally the offices created by the Act organizing Ravalli county by naming the several officers in the Act, including commissioners, and that the commissioners so named in the Act held for the time prescribed in the Act, and that at the end of that time, to-wit, at the next general election thereafter, it was lawful and proper under the Constitution, to elect their successors, who would be entitled to hold their offices for four years, the term for which commissioners hold office under the Constitution from the time of their qualification.''

When we read the Act creating Ravalli county, we find that it contains these provisions:

''Section 3. The following named persons are hereby appointed to fill the offices set opposite their names respectively, to-wit: * * * Who shall have the same powers, duties and privileges as are by law conferred upon like officers in other counties, and who shall hold their respective offices until after the next general election or until their successors are duly elected and qualified. * * *

''Section 4. At the next general election three county commissioners shall be voted for in the county of Ravalli. The two persons receiving the highest number of votes for county commissioner shall hold the office until the next general elec-

tion of 1898, and until their successors are elected and quali-
fied, and the person receiving the next highest number of
votes for county commissioner shall hold his office until the gen-
eral election in the year 1896, and until his successor is elected
and qualified.'' (Laws, 1893, p. 210.)

In the Act creating Sanders county there is no provision
similar to section 4 of the Act creating Ravalli county. Bear-
ing in mind that the legislature had power to fix the terms of
office of its appointees, with the limitation heretofore noticed,
section 4 of the Act just quoted, providing that one of the
commissioners chosen at the next general election should hold
his office until the general election in 1896, discloses the fact
that the legislature, in employing the words ''the next general
election'' in section 3, referred to the next general election for
any purpose, or the general election of 1894, because that was
the only election at which this commissioner could be chosen.

The statement of the case in *State ex rel. Williams* v. *May-
hew*, as reported, is incomplete, in that it fails to show that
the contest therein referred to was between one set of county
commissioners elected in 1894 and three others who claimed to
have been elected in 1896. It will be seen that the law creat-
ing Ravalli county provided expressly for an election to these
offices in 1894, and the court properly held that those persons
so elected in 1894 were entitled to the offices. In the *Mayhew
Case* the court also said: ''We are unable to find any support
for the theory that by the terms or spirit of the Constitution,
commissioners should always be elected in all the counties, old
and new, at the same time, and that time every four years
from the date of the adoption of the Constitution.'' This lan-
guage was undoubtedly employed to negative the contention that
county commissioners were to be chosen at any particular general
election. But in the Act creating Sanders county it is provided
that the new county shall form a part of the fourth judicial
district, and this court takes judicial notice of the fact that the
judge of that district was elected in 1904 for a term of four
years, and that his successor must be chosen at the general elec-

tion in 1908, which is, therefore, the next general election since the creation of Sanders county at which a clerk of the court would be regularly chosen.

In the case of *State ex rel. Watson* v. *Cobb,* 2 Kan. 32, it was held that a regular election was one held in conformity with the established rule laid down in the Constitution. The court also said: "So that the next regular election is the one next occurring at which the particular class of judicial officers is to be chosen." And in *Matthews* v. *Board of County Commissioners,* 34 Kan. 606, 9 Pac. 765, the same court, after quoting the foregoing language, said: "These definitions we think are correct."

In *State ex rel. Daggett* v. *Collins,* 2 Nev. 351, a contest for the office of school superintendent, the court interpreted the phrase "until the next general election" to mean until the next general election at which a superintendent could be elected.

Speaking of the power of a city council to fill a vacancy in the office of municipal judge, under a charter provision giving authority to fill all vacancies "until the next regular election," the supreme court of Florida, in *State ex rel. Attorney General* v. *Philips,* 30 Fla. 579, 11 South. 922, said: "Our construction is that, when the city council elects an eligible person to fill a vacancy, he holds his office for the unexpired term, and until the next regular election for filling the office of municipal judge."

In the case of *People* v. *Wilson,* 72 N. C. 155, it was held that the words "until the next regular election" mean until the next regular election for the office in which a vacancy occurred.

The supreme court of California in *People* v. *Col,* 132 Cal. 334, 64 Pac. 477, said: "We think the phrase 'next general election' refers to the general election for filling the particular office to which the person is appointed." (See, also, *People* v. *Budd,* 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46; *State ex rel. McGee* v. *Gardner,* 3 S. Dak. 553, 54 N. W. 606.)

It may be admitted, as a basis for an argument, that the legislature had power to provide specifically that the appellant should hold his office by appointment until the general election for 1906, when his successor should be elected to hold until the following general election, but this does not assist us in answering the question here involved. The question here is: What did the legislature mean when it used the general language it employed, in view of the constitutional provisions fixing the term of office and time of election of clerks of the district courts generally? The legislature is presumed to have been familiar with the constitutional provisions quoted, and we are therefore satisfied that in not providing specifically for an election of clerk of the district court in November, 1906, it intended that the appointee should hold until the present term of the judge of that district expired.

A few cases and some dissenting opinions of judges may be found in which the views expressed in the foregoing cases are not concurred in; but, in view of the phraseology of the law creating Sanders county, and the constitutional provisions here referred to, we have no hesitancy in holding that the words "next general election," as used in the Act under discussion, mean, so far as the office of clerk of the district court is concerned, not the next general election held for any purpose, but the next general election held in conformity with the general law for filling that particular office in that judicial district, and that, therefore, the court below erred in entering a judgment for the relator.

The judgment of the district court of Sanders county is reversed, and the cause remanded, with directions to enter judgment in favor of the appellant, to the effect that he is entitled to the office of clerk of the district court in and for Sanders county.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.