[No. 8967.  *En Banc.*  August 5, 1910.]

THE STATE OF WASHINGTON, *on the Relation of Benjamin R. Fish, Plaintiff*, v. I. M. HOWELL, *Secretary of State, Respondent.*[1]

STATES—STATE OFFICERS—VACANCY—EXPIRATION OF TERM. Under Const., art. 3, § 13, providing that a vacancy in a state office not otherwise provided for shall be filled by the governor by appointment "which shall expire when a successor shall have been elected and qualified," the constitution not providing in direct terms for elections to fill vacancies except in the offices of supreme and superior court judges, an appointment to fill a vacancy in the office of secretary of state is for the balance of the term for which his predecessor was elected, or until the next general election for state officers, fixed by the constitution at every fourth year.

ELECTIONS—TIME FOR HOLDING—VACANCY. Elections do not follow by reason of a vacancy, as there can be no election except under express statutory authority.

[1]Reported in 110 Pac. 386.

Application filed in the supreme court July 19, 1910, for a writ of mandate to compel the secretary of state to file the relator's declaration of candidacy for the office of secretary of state. Denied.

G. C. *Israel* and *Frank C. Owings*, for relator.

*The Attorney General* and *W. V. Tanner, Assistant*, for respondent.

CHADWICK, J.—On the 4th day of May, 1909, Sam H. Nichols, who had been regularly elected to the office of secretary of state at the general election held on the 7th day of November, 1908, tendered his resignation, and thereafter, on the 10th day of May, 1909, the respondent, I. M. Howell, was appointed by the governor to the office of secretary of state. On May 15, 1909, he regularly and duly qualified and has ever since been, and is now, discharging the duties of that office. On the 19th day of July, 1910, the relator, Benjamin R. Fish, tendered a declaration of his candidacy for the office of secretary of state, under the provisions of the direct primary law, contending and claiming that the vacancy so occurring in the office of secretary of state and filled by appointment as aforesaid, was limited to the next general election, at which time the office should be filled by a vote of the people. His tender being refused, this proceeding was brought so that the question might be settled by the judgment of this court.

It will be evident that the only question for our determination is whether, under the constitution and laws of this state, an election for the office of secretary of state is to be held at the oncoming general election. Section 1, art. 3 of the constitution, relates to the date and place of voting, and in no way fixes the term of the officers mentioned therein. It is as follows:

"The executive department shall consist of a governor, lieutenant governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and a

commissioner of public lands, who shall be severally chosen by the qualified electors of the state at the same time and place of voting as for the members of the legislature."

Section 3, art. 3, of the constitution, provides:

"The lieutenant governor, secretary of state, . . . shall hold their offices for four years respectively, and until their successors are elected and qualified."

Section 13 of the same article provides:

"When, during a recess of the legislature, a vacancy shall happen in any office the appointment to which is vested in the legislature, or when at any time a vacancy shall have occurred in any other state office for the filling of which vacancy no provision is made elsewhere in this constitution, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

The respondent was appointed and holds his office under the terms and provisions of this section. The only other section of our constitution pertinent to the question under consideration is § 8 of art. 6:

"The first election of county and district officers not otherwise provided for in this constitution, shall be on the Tuesday next after the first Monday in November, eighteen hundred and ninety, and thereafter all elections for such officers shall be held biennially on the Tuesday next succeeding the first Monday in November. The first election of all state officers not otherwise provided for in this constitution, after the election held for the adoption of this constitution, shall be on the Tuesday next after the first Monday in November, eighteen hundred and ninety-two, and the elections for such state officers shall be held in every fourth year thereafter on the Tuesday succeeding the first Monday in November."

The constitution does not in direct terms provide for elections to fill vacancies in state offices, except as such vacancies may occur in the offices of supreme or superior court judges. Sections 3 and 5, of art. 4, make such provision in the following language:

"If a vacancy occur in the office of a judge . . .the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term."

Following the ordinary rule of statutory construction, it would seem that, if the members of the constitutional convention intended that all offices as well as those of judges should be filled at the next general election, they would have so provided either by particular reference as in the case of judges, or by a general provision. Not having done so, the case reduces itself to a construction of the words "which shall expire when a successor shall have been elected and qualified."

The constitutional or statutory provisions for the time of an election to fill vacancies in public offices vary in the different states. "Until the next general election;" "the next election by the people;" "the next annual election;" "until the next general election or until their successors are duly elected and qualified," etc. etc., are the usual terms employed. In only one state—Oregon—is there a provision in the exact language adopted by the framers of our constitution. These several provisions have been construed in different ways by the courts, some of them holding that the office being elective, it is the policy of the law to sanction the filling of a vacancy by appointment only *ad interim* until the next general election, when the people may assert the right of franchise and selection; others holding that the term and not the person is the paramount consideration, and that the appointment continues until the next general election at which, in the regular order of things, the election for such office is provided by law. Much might be said on either side, for the policy of the law is debatable. But, however much conjecture has been indulged in the cases, all of them in their last analysis depend upon a proper construction of the constitution and statutory provisions, and not upon the consideration

of those theoretical questions proper to be considered, and which we must presume have been considered, by the legislative body or the people as a whole when the constitution was adopted. It will be borne in mind that our constitution does not use the words "next general election," but does say that the appointment "shall expire when a successor shall have been elected and qualified." Adopting relator's theory that the proper construction of our constitutional provision is that it means the next general election, we find that the words "next general election," and equivalent phrases, have been construed by the courts, and the modern authority is that the appointment does not expire until the expiration of the regular term, unless such be the plain intent or unmistakable terms of the statute.

In *State ex rel. Watson v. Cobb*, 2 Kan. 32, and in *Matthews v. Com'rs of Shawnee County*, 34 Kan. 606, 9 Pac. 765, approved in *Ward v. Clark*, 35 Kan. 315, 10 Pac. 827, it was held that the phrase "next general election," as found in the constitution of Kansas, meant "the next election held conformably to established rule or law;" also, "the regular election prescribed by law for the election of a particular officer to be elected." In *People ex rel. Lynch v. Budd*, 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46, under a contention that a vacancy in the office of lieutenant governor should be filled at the first general election following the occurrence thereof, the court said, after quoting § 8, art. 5, of the constitution of that state, which reads:

"When any office shall from any cause become vacant, and no mode is provided by the constitution and law for filling such vacancy, the governor shall have the power to fill such vacancy by granting a commission, which shall expire at the end of the next legislature, or at the next election by the people,"

"An office has become vacant, and there is no other mode provided by the constitution or laws to fill it. 'The next election by the people' does not mean the next general election, or the next election held by the people, but it must

mean that the appointee shall hold until someone has been
elected to fill that office. But there is nothing in this pro-
vision which indicates when this election shall be held, but
only that until someone has been elected to fill the vacancy
the appointee shall hold. This section does not direct that
such election shall be at the next general election. It pro-
vides simply for filling vacancies by appointment, and that
such appointees shall hold until the office is filled in the manner
provided by law; but does not itself provide for such elec-
tion, or direct when it shall be. If, however, the phrase 'the
next election by the people,' is equivalent to the phrase 'the
next election,' and we assume that it was intended thereby to
indicate the election at which such vacancy would be filled, we
would feel compelled to hold that the next election is that
which the constitution has provided for filling that particular
office, that is, the next gubernatorial election."

In *State ex rel. Livesay v. Smith*, 35 Mont. 523, 90 Pac.
750, the court had under consideration a similar case, the
constitutional provision being that the appointee should hold
his office "until the next general election or until their succes-
sors are duly elected and qualified." The question was re-
solved as it was resolved by the supreme court of California,
the reasoning of the court being as follows:

"The main question to decide here is: What is the meaning
of the phrase 'the next general election' as employed in this
act? Respondent contends that it means the next general
election held for any purpose, while appellant's claim is that
is means the next general election at which a clerk of the
district court would be elected in conformity with established
law. . . . It may be admitted, as a basis for an argument,
that the legislature had power to provide specifically that
the appellant should hold his office by appointment until the
general election for 1906, when his successor should be
elected to hold until the following general election; but this
does not assist us in answering the question here involved.
The question here is: What did the legislature mean when it
used the general language it employed, in view of the con-
stitutional provisions fixing the term of office and time of
election of clerks of the district courts generally? The legis-
lature is presumed to have been familiar with the constitu-

32—59 WASH.

tional provisions quoted, and we are therefore satisfied that in not providing specifically for the election of clerk of the district court in November, 1906, it intended that the appointee should hold until the present term of the judge of that district expired."

It seems to us that the rule under our constitution is consistent with that declared in the above cases, especially so when it is considered that care was taken to fix not only the terms of the several state officers, but the particular time at which they shall be elected. The words "the first election of all state officers . . . shall be on the Tuesday next after the first Monday in November, 1892, and the elections of such officers shall be held in every fourth year thereafter on the Tuesday succeeding the first Monday in November," can mean only one thing, that is that elections for the several state offices shall occur, and shall occur only, on the first Monday in November, 1892, and every fourth year thereafter. The constitution designedly omits the usual provision, "next election," or its equivalent, and likewise fails to provide for special elections to fill vacancies; but if the construction contended for by the relator be adopted, there would be in effect a special election in so far as the office of secretary of state is concerned. The fact that the voting occurred at a general election would not deprive it of that character. It is not necessarily the time or manner of holding an election to fill a vacancy that makes it a special election, but the fact that it is held at a time other than the time fixed by law to elect an officer for the regular or defined term.

In the syllabus to *Kenfield v. Irwin*, 52 Cal. 164, the following definitions will be found:

"General election:—A general election is an election held to select an officer after the expiration of the full term of the former officer.

"Special election:—A special election is an election held to supply a vacancy in office occurring before the expiration of the full term for which the incumbent was elected."

An election does not follow by reason of the fact that there-

has been a vacancy and an appointment. Although this assumption is prevalent, it is not sustained by any authority, for the law is that elections are no longer a *viva voce* expression of the people voluntarily assembled, but from the necessities arising out of greater populations, must be held in strict conformity with some statute or the constitution. So the rule has been declared to be that elections can only be held when affirmatively authorized by law; and, although we followed relator in his construction of the constitution, he would yet be without remedy, for neither the constitution nor the statutes of this state authorize the election of any officer of the executive department at the next election, or at any election held in a so-called off year.

Garoutte, J., concurring in the case of *People ex rel. Lynch v. Budd, supra,* although questioning the construction put upon the words "next general election" by the majority, said:

"For, though the appointee's commission expire at 'the next election by the people,' still, in the absence of some law authorizing the election of a lieutenant-governor at that time, no election can be held, as I find no such law. A provision of the constitution or statute declaring a certain day upon which the commission of an officer shall expire, is in no sense a provision that an election shall be held upon that day to fill the office. Under these conditions the present appointee of the governor will hold until his successor is elected and qualified, regardless of the day upon which his commission may expire; and his successor can only be elected at a time fixed by law, which time will be at the regular state election in the year 1898."

To the same effect is *People ex rel. Cloud v. Wilson,* 72 N. C. 155; *Sawyer v. Haydon,* 1 Nev. 75; *State ex rel. Daggett v. Collins,* 2 Nev. 351; *State ex rel. McGee v. Gardner,* 3 S. D. 553, 54 N. W. 606; *Wainwright v. Fore,* 22 Okl. 387, 97 Pac. 831.

In further support of our judgment, it will be noticed that the constitution does not say that the officer shall hold until *his* successor is elected, but that the appointment shall expire

when *a* successor is elected; meaning, no doubt, a successor to the term and not to the person. No provision being made for the election of a secretary of state except in the years fixed by the constitution, the next regular election for that office would occur in 1912, until which time, and until the one then elected shall duly qualify, the present incumbent is entitled to hold the office. The fact that the constitution is careful to provide for the filling of vacancies in judicial offices at the next general election, and has made no such provision for other state offices, is an evidence of the intention of the people to preserve, in so far as the administrative offices of the state are concerned, the harmony of their tenure and the time of their selection. The following cases throw some light on the question before us: *People ex rel. Murphy v. Col,* 132 Cal. 334, 64 Pac. 477; *Wainwright v. Fore, supra; State ex rel. Attorney General v. Phillips,* 30 Fla. 579, 11 South. 922. The relator relies upon the following cases: *State ex rel. Welsh v. Mechem,* 31 Kan. 435, 2 Pac. 816; *State ex rel. Whitney v. Johns,* 3 Ore. 533, and *State ex rel. Weeks v. Gamble,* 13 Fla. 9.

The Kansas case is of doubtful authority, when considered in connection with the later expressions of the same court. But if it be otherwise, the controlling element in the case was a statute which provided that all appointments to fill vacancies should continue "until the next general election and such vacancy shall be filled by an election." The Oregon case may sustain the contentions of the relator, but if it does. it is contrary to all of the more recent authorities. It was there held that an office is in the nature of a personal franchise; that an election to fill a vacancy shall occur at the next general election, and that the one elected holds, not for the unexpired term, but for a full constitutional term, four or six years, as the case may be. This would be contrary to the spirit of our constitution, which seems designed to effect uniformity of elections for state officers. The dissenting opinion of Judge Strahn, in *Baker v. Payne,* 22 Ore. 335, 29 Pac.

787, is in harmony with our holding that no election can occur although a general election be held, unless it is provided by law that such officer shall be elected at that time. The Florida case, like the Oregon case, was grounded upon the earlier California decisions, and is at variance with the general rule and probably with the later expressions of the same court.

The writ is denied.

RUDKIN, C. J., FULLERTON, GOSE, MORRIS, CROW, and PARKER, JJ., concur.