[No. 17904. *En Banc.* November 14, 1923.]

THE STATE OF WASHINGTON, *on the Relation of C. E. DeBow, Respondent,* v. A. G. McNEILL, *Appellant.*[1]

COUNTIES (12) — OFFICERS — VACANCY — EXPIRATION OF TERM—STATUTES—CONSTRUCTION. The next general election, in Const., Art. XI, § 6, providing that county officers appointed to fill a vacancy shall hold office until then, means the next general election for the election of county officers; and not the next election to fill a particular four-year term of a county commissioner; the territorial act, Rem. Comp. Stat., § 4044, providing for appointments to fill the unexpired term having been superseded by the constitution.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered February 20, 1923, upon findings in favor of the plaintiff, in an action in *quo warranto* to try title to the office of county commissioner, tried to the court. Affirmed.

*G. W. Hamilton* and *Grady & Velikanje,* for appellant.

*Stephen E. Chaffee, R. John Lichty,* and *Andrew Brown,* for respondent.

HOLCOMB, J.—This *quo warranto* proceeding resulted in a judgment in the court below that relator was entitled to the office of county commissioner for commissioner's district No. 2, of Benton county, Washington.

A vacancy having occurred by the resignation of the incumbent of that office, who had been duly elected at the November general election, 1920, for the four-year term of county commissioner for that county, appellant was appointed to fill the vacancy. At the next general election, November, 1922, both relator and appellant filed for the nominations of their respective

[1]Reported in 219 Pac. 852.

parties, each received the nomination of his party, and relator was duly elected by the voters to fill the office. Appellant then refused to vacate the office, contending that his appointment was for the unexpired four-year term to which the predecessor had been elected.

Appellant contends that, where a county commissioner is elected for a four-year term in any county, and the incumbent resigns at any time within the first two years of the term, his successor appointed by the board of county commissioners holds office until the next general election, at which, in the regular order of things, the election for such office is provided by law to be held. He relies upon Rem. Comp. Stat., § 4044 [P. C. § 1657], reading:

"Whenever it shall become necessary to elect or appoint a commissioner to fill any vacancy occasioned by death, resignation, or otherwise, the person so elected or appointed shall hold his office for the unexpired term for which his predecessor was elected, and until his successor is elected and qualified."

The above provision has come down to us unchanged since the legislature of 1854. In 1867, the legislature adopted another provision reading as follows:

"In all cases of vacancy occurring in any of the county offices in this state either by death, resignation or otherwise, it shall be the duty of the county commissioners of the county in which such vacancy occurs, at the first session thereafter, or as soon thereafter as practicable, to appoint a suitable elector of the proper county to fill such vacancy; such officer to remain in or hold the office to which he may have been appointed until the first general election after his appointment." Laws of 1867, p. 57 [Rem. Comp. Stat., § 4059].

In 1889, the constitution adopted contained the following provisions:

"Article XI, § 5. The legislature, by general and uniform laws, shall provide for the election in the sev-

eral counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their terms of office.''

"Article XI, § 6. The board of county commissioners in each county shall fill all vacancies occurring in any county, township, precinct, or road district office of such county by appointment, and officers thus appointed shall hold office until the next general election, and until their successors are elected and qualified.''

Appellant contends that the term "next general election," as contained in §§ 5 and 6 of art. XI of the constitution, mean the next general election at which the particular office is usually filled, unless some statute or constitutional provision clearly provides otherwise, and that where one is elected to an office for a four-year term, and a vacancy occurs in that office, the incumbent holds that office until such election, even if there is a regular or general county election held in the intervening biennium. In other words, as applied to the facts in this case, appellant insists that, when the incumbent, who was elected in 1920 as county commissioner for the four-year term, resigned and appellant was appointed in 1921 to succeed him. the term "next general election," as applied here, means the general election to be held at the end of the four-year term of the resigned incumbent, which would be held in 1924.

It is contended that the above principle has been decided in our case of *State ex rel. Fish v. Howell,* 59 Wash. 492, 110 Pac. 386, 50 L. R. A. (N. S.) 336, and other cases cited.

In *State ex rel. Fish v. Howell, supra,* the secretary of state had been elected for a four-year term. The office became vacant at a time within the first two years

thereof, and a candidate tendered his filing for the office. It was rejected. Proceedings were brought to compel the acceptance thereof. It was held that, inasmuch as the officer had been elected for a four-year term, and no provision was made by law for the election of a state officer at the biennium, the term "next general election" meant the next election at which such officers were ordinarily elected, and that the proffered filing was properly rejected. The court reviewed the authorities defining the term "next general election," and other similar terms used in the constitution and statutes, and adopted the rule of those states holding that it meant the next general election at which the particular office would, in the ordinary course of law, be filled by an election.

But the constitutional provisions applying in that case were as follows:

"Article III, § 1. The executive department shall consist of a governor, lieutenant-governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and a commissioner of public lands, who shall be severally chosen by the qualified electors of the state at the same time and place of voting as for the members of the legislature."

"Article III, § 3. The lieutenant-governor, secretary of state, . . . shall hold their offices for four years respectively, and until their successors are elected and qualified."

"Article III, § 13. When, during a recess of the legislature, a vacancy shall happen in any office the appointment to which is vested in the legislature, or when at any time a vacancy shall have occurred in any other state office for the filling of which vacancy no provision is made elsewhere in this constitution, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

Another provision affecting the matter was § 8, of art. VI, of the constitution, which provided that the first election of state officers should be held at a certain time in 1892, and that elections for such state officers shall be held in every fourth year thereafter on the Tuesday succeeding the first Monday in November.

It will thus be seen that there was no provision made or machinery provided for the election of such executive officers under the constitution except every fourth year after 1892, and those were officers to hold their offices for four years, and until their successors were elected and qualified, under the provisions of §§ 1, 3, and 13, of art. III, of the constitution.

Certain language contained in the opinion in the *Howell* case, *supra,* is taken to be almost conclusive of the question here, that being as follows:

"An election does not follow by reason of the fact that there has been a vacancy and an appointment. Although this assumption is prevalent, it is not sustained by any authority, for the law is that elections are no longer a *viva voce* expression of the people voluntarily assembled, but from the necessities arising out of greater populations, must be held in strict conformity with some statute or the constitution. So the rule has been declared to be that elections can only be held when affirmatively authorized by law; and, although we followed relator in his construction of the constitution, he would yet be without remedy, for neither the constitution nor the statutes of this state authorize the election of any officer of the executive department at the next election, or at any election held in a so-called off year."

On the contrary, we are of the opinion that that language does not sustain appellant, but sustains respondent. Concerning the offices there involved, there was no provision for any election except the quadrennial elections to be held at stated times on and

after 1892. Here the contrary is the case, and here, if the act of 1867 (now § 4059, Rem. Comp. Stat.) did not supersede the act of 1854, which provided that · the person appointed to fill a vacancy in the office of county commissioner should hold office for the unexpired term for which his predecessor was elected and until his successor was elected and qualified, the constitution did supersede it; but it is apparent that, even in the territorial days, as shown by the act of 1867 (§ 4059, Rem. Comp. Stat.), the law-making body evinced a purpose to require all vacancies in county offices to be filled by election at the next or the first general election after the vacancy occurred. Section 6, of art. XI, of the constitution is explicit to that effect.

We cannot concur in the argument that the "next general election," as provided in the constitution, means the next general election at which elections would be held in due course for a four-year term of office, and that it would be a special election that would necessarily be held as to such unexpired term. The general elections always referred to by constitution and statutes must be taken to be the regular elections held at stated times under the law for the election of public officers. In such case as this, therefore, there are provisions and machinery for the election of officers to fill unexpired terms of offices becoming vacant by death, resignation, etc.

It was decided in *State ex rel. Linn v. Millett*, 20 Wash. 221, 54 Pac. 1124, where the office involved was that of judge of the superior court, and under a different constitutional provision, that the "next general election," under the constitutional provision, meant the next regular biennial election occurring after the vacancy occurred.

We are obliged to construe statutory and constitutional provisions according to their plain language and

intent, and we are convinced that § 4044, *supra*, which came down to us from territorial days, was superseded by the plain provisions of §§ 5 and 6, of art. XI, of the constitution.

Appellant was, therefore, not entitled to hold for the remainder of the four-year term of his predecessor, and respondent, who was elected at the next biennial general election to fill the vacancy caused by the resignation, was properly and legally elected thereto, and is entitled to the office.

Judgment affirmed.

MAIN, C. J., TOLMAN, MACKINTOSH, BRIDGES, MITCHELL, and PEMBERTON, JJ., concur.