Dear Senator Sykes:
This office has received a request for an official Attorney General Opinion from your predecessor who asked, in effect, the following question:
 When a city or town calls for an election on whether the municipality shall frame a charter for its own government and elect a board of freeholders to prepare the charter, when is the election to be held?
Your request brings into question a potential conflict between the Oklahoma Constitution and statutes authorizing cities to hold a charter election and the election statutes as applied to municipalities.
 MUNICIPAL CHARTER ELECTIONS
The right of cities to frame and adopt a charter is found in the Oklahoma Constitution, which in pertinent part provides:
 Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city, to be elected by the qualified electors of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city. . . .
OKLA. CONST. art. XVIII, § 3(a). Oklahoma law provides that any qualified city or town may adopt a charter for its governance and thus become a "home rule" city. 11 O.S. 2001, § 13-101[11-13-101]. ArticleXVIII, § 3(b) of the Oklahoma Constitution further provides:
 An election of such board of freeholders may be called at any time by the legislative authority of any such city, and such election shall be called by the chief executive officer of any such city within ten days after there shall have been filed with him a petition demanding the same, signed by a number of qualified electors residing within such city, equal to twenty-five per centum of the total number of votes cast at the next preceding general municipal election; and such election shall be held not later than thirty days after the call therefor. At such election a vote shall be taken upon the question of whether or not further proceedings toward adopting a charter shall be had in pursuance to the call, and unless a majority of the qualified electors voting thereon shall vote to proceed further, no further proceeding shall be had, and all proceedings up to that time shall be of no effect.
Id. (emphasis added). Section 3(a) of Article XVIII of the Oklahoma Constitution has been held to be self-executing, i.e., the substantive provisions of the Constitution may not be altered by the Legislature.State v. Scales, 97 P. 584, 587 (Okla. 1908). The statutory provisions on adoption of a charter include the following:
 The mayor of an incorporated municipality shall issue an order calling for an election on the question of whether or not the municipality shall frame a charter for its own government and elect a board of freeholders to prepare the charter when:
 1. A petition signed by not less than twenty-five percent (25%) of the registered voters of the municipality, as shown by the preceding general election, is filed with the governing body; or
 2. The governing body, by resolution, so directs.
 The order calling for the election shall be issued within ten (10) days after a petition has been filed with the governing body or within ten (10) days after the date of the governing body resolution.
11 O.S. 2001, § 13-102[11-13-102] (emphasis added). The statutory authority for this vote is as follows:
 The election on the question and board of freeholders shall be held at a general or special election to be held in the municipality within thirty (30) days after the order calling for the election. Notice of the election shall be given in the manner required for municipal elections. The question submitted to the registered voters of the municipality shall be substantially in the following form:
 Shall the ____________ (City or Town) of ____________ frame a charter for its own government?
 ( ) Yes. ( ) No.
The board of freeholders, which is to be voted on in the same election, shall consist of two qualified electors from each ward in the municipality. The freeholders shall be elected by the registered voters of the respective wards. The two candidates receiving the highest number of votes in each ward shall be elected as members of the board of freeholders. The ballot shall be substantially in the following form:
 For Freeholder from Ward One (Vote for Two)
__________ Name of candidate for freeholder
__________ Name of candidate for freeholder.
11 O.S. 2001, § 13-103[11-13-103] (emphasis added). An historical review of 11 O.S. 2001, § 13-103[11-13-103] reveals it was first enacted in 1907 and last amended in 1977 extending the allowable election period from 25 to 30 days.[1]
 ELECTIONS
Title 26 of the Oklahoma Statutes provides the framework for elections in Oklahoma. There is a State Election Board[2] with duties and responsibilities and each county has its own election board.[3]
Statutory provisions for municipal elections are found at Article XIII of Title 26. Effective January 1, 1975,[4] all municipal elections were required to be conducted by county election boards unless otherwise provided by law. Title 26 O.S. 2001, § 13-101[26-13-101] states:
 All municipal elections conducted in the State of Oklahoma shall be conducted by the county election board of the county wherein said municipality's central offices are located, unless otherwise provided by law.
26 O.S. 2001, § 13-101[26-13-101][5] (emphasis added). Statutory restrictions on municipal election dates provide:
 After July 1, 2005, no county election board shall be required to conduct elections for any municipality on a date other than an election date identified in subsection B of Section 3-101 of this title. Municipalities that hold both primary and general elections, in addition to scheduling elections on dates identified in subsection B of Section 3-101 of this title, shall provide no fewer than thirty-five (35) days between the primary and general elections; except however, primary and general elections may be scheduled on the identified election dates in March and April when there are fewer than thirty-five (35) days between the election dates.
26 O.S. Supp.2006, § 13-101.1.[6] The statute setting dates for a municipal election provides:
 A. No election required to be conducted by any county election board shall be scheduled for a day other than Tuesday.
 B. Except as otherwise provided by law, no special election shall be held by any county, school district, technology center school district, municipality or other entity authorized to call elections except on the second Tuesday of January, February, May, June, July, August, September, October, November and December and the first Tuesday in March and April in odd-numbered years and the second Tuesday of January, February, May, and December, the first Tuesday in March and April, the last Tuesday in July, the fourth Tuesday in August, and the first Tuesday after the first Monday in November of any even-numbered year; except in any year when a Presidential Preferential Primary Election is held in February, the date for the special elections shall be the same date as the Presidential Preferential Primary Election.
 C. In the event that a regular or special election date occurs on an official state holiday, the election shall be scheduled for the next following Tuesday.
26 O.S. Supp.2006, § 3-101[7] (emphasis added). The notice to the election board for a municipal election is:
 Not fewer than fifteen (15) days before the filing period for any regular municipal election,[8] or in the event of a special election, not fewer than sixty (60) days before such election, the governing board of any municipality shall submit a resolution to the secretary of the county election board conducting such election. Such resolution shall contain the following facts:
 1. The dates of the election or elections;
 2. The offices to be filled or the questions to be voted upon at such election or elections;
 3. Qualifications for such offices;
 4. Designation of which offices shall be filled by voting by ward and which offices shall be filled by voting at large;
 5. Indication of whether the election will be partisan or nonpartisan;
 6. For charter cities where the charter is silent, indication of any portion of state law which will apply; and
 7. Any other information necessary for conducting said election or elections.
26 O.S. Supp.2006, § 13-102 (emphasis added) (footnote added). The statute on notice to the election board for municipal elections was first enacted in 1974.[9]
 DISCUSSION
The statutory and constitutional provisions on calling municipal charter elections contain potentially conflicting language. The Oklahoma Constitution Article XVIII, § 3(b) provides "such election [for board of freeholders] shall be held not later than thirty days after the call therefor." Accordingly, the first sentence of 11 O.S. 2001, § 13-103 [11-13-103] provides the election "shall be held . . . within thirty (30) days after the order calling for the election." The second sentence of Section 13-103 then states, "[n]otice of the election shall be given in the manner required for municipal elections." Id. However, the current provision governing notice to the election board for a special municipal election requires that the resolution be submitted to the secretary of the county election board "not fewer than sixty (60) days before such election." 26 O.S. Supp.2006, § 13-102.
Since 1977 the notice period in 11 O.S. 2001, § 13-103[11-13-103] for municipal charter elections has been 30 days. Title 26 O.S. Supp.2006, § 13-102, requiring notice to the County Election Board of a municipal election, was first enacted in 1974 [10] ("not fewer than thirty (30) days"), further amended in 1985 ("not fewer than (45) days"),[11] and amended again in 1993 ("not fewer than sixty (60) days").[12]
"[R]esolution of doubt as to the meaning of a statute may be accomplished by reference to its history; and to the history of the times or contemporary circumstances existing at the time of the passage of the act and presumed to have been considered at the time of its enactment." Sheridan Oil Co. v. Superior Court, 82 P.2d 832, 834 (Okla. 1938) (citations omitted). When the charter election provisions were enacted, cities and towns conducted their own elections through municipal precinct election boards. See Okla. R.L. 1910, § 441.
Since 1974 county election boards have conducted virtually all municipal elections. See 26 O.S. 2001, § 13-101[26-13-101]. The original enactment provided "not fewer than thirty (30) days before such [special] election, the governing board of any municipality shall submit a resolution to the secretary of the county election board conducting said election."[13] Subsequent amendments raised the days to 45[14] and then to the present 60 days.[15] Any number of factors could facilitate the need for additional notice by a county election board to conduct a municipal election.[16] The notice to the election board provisions of 26 O.S. Supp.2006, § 13-102 were created later in time, and, therefore, would ordinarily override the inconsistent provisions of 11 O.S. 2001, § 13-103[11-13-103] were it not for the language of the Constitution in Article XVIII, Section 3(b).
Further, special municipal elections are only permitted on definite dates pursuant to 26 O.S. Supp.2006, § 3-101(B) as follows:

 Odd Year Even Year
January 2nd Tuesday 2nd Tuesday
February 2nd Tuesday 2nd
 Tuesday[17]
March 1st Tuesday 1st Tuesday
April 1st Tuesday[18] 1st Tuesday
May 2nd Tuesday 2nd Tuesday
June 2nd Tuesday
July 2nd Tuesday Last Tuesday
August 2nd Tuesday 4th Tuesday
September 2nd Tuesday
October 2nd Tuesday
November 2nd Tuesday 1st Tuesday after
 the 1st Monday
December 2nd Tuesday 2nd Tuesday

[17] When a Presidential Preferential Primary Election is held in February, the date for the special election shall be the same date as the Presidential Preferential Primary Election. 26 O.S. Supp.2006, 3-101(B).
[18] Municipal general elections are held on the first Tuesday in April in each odd-numbered year. 11 O.S. 2001, § 16-103[11-16-103].
Id. The 2004 legislature enacted Section 13-101.1 of Title 26 and then amended it in 2005[19] reiterating this restriction which in pertinent part provides:
 After July 1, 2005, no county election board shall be required to conduct elections for any municipality on a date other than an election date identified in subsection B of Section 3-101 of this title.
Id. (emphasis added).
The question comes down to when an election to select freeholders to draft a charter can be scheduled, in light of the apparently conflicting provisions.
The process of adopting a municipal charter involves two phases: first, the election of freeholders and the drafting of a proposed charter ("phase one"), and second, the submittal of the question of adoption of the charter by city voters ("phase two"). OKLA. CONST. art. XVIII, § 3(a). Your question was submitted in terms of phase one, i.e., holding an election to select freeholders to draft the proposed charter under 11 O.S.2001 Supp.2006, §§ 13-102, 13-103 and OKLA. CONST. art. XVIII, § 3(b). We were not asked, nor do we undertake to answer in this Opinion, the procedure or date of holding an election on the second phase to approve the proposed charter.
"The cardinal principle of statutory construction is to save and not destroy." In re Okla. Dep't of Transp., 64 P.3d 546, 553 (Okla. 2002). "Only when the circumstances clearly indicate that in enacting the statute the legislature has overlooked something will this court apply rules of statutory construction in an effort to clarify and make sensible an act's purview." Arrow Tool Gauge v. Mead, 16 P.3d 1120,1125-26 (Okla. 2000). There must be an "irreconcilable" conflict (see Gulf Oil Co. v. Woodson, 505 P.2d 484, 487 (Okla. 1972)), and the conflict must be "clear and manifest." Citicorp Sav. Trust Co. v.Banking Bd., 704 P.2d 490, 494 (Okla. 1985).
In case of an irreconcilable conflict between a statute and a provision in the State Constitution on the same subject, the constitutional provision must prevail. The State Constitution is the supreme law of the State. Ex Parte Hunnicutt, 123 P. 179, 184 (Okla. Crim. 1912). While every effort must be made to reconcile statutes with the Constitution, a statute cannot be read so as to nullify a constitutional mandate. Cox v. Okla. Tax Comm'n, 168 P.2d 634, 642-43
(Okla. 1946). A provision of the Constitution which is complete unto itself, i.e., a self-executing provision, needs no vitalizing statute or procedure for enforcement. Id. at 645. It is beyond the control of the Legislature. Id.; see also Scales, 97 P. at 587.
The first sentence of 11 O.S. 2001, § 13-103[11-13-103] (requiring a 30-day notice) is consistent with the requirements of OKLA CONST. art. XVIII, § 3(b) since each requires a municipal election to select freeholders to be held within 30 days of the call for the election.
The only way to avoid an irreconcilable conflict between 26 O.S. Supp.2006 § 13-102, which requires a minimum 60-day notice to the county election board of a special municipal election and Article XVIII, Section 3(b) of the Oklahoma Constitution, is to read the election statutes, i.e., 26 O.S. 2001 Supp.2006, §§ 13-101 and 13-102 together, as not applying to special municipal freeholder elections because procedures for those elections are "otherwise provided by law." In other words, the election board is relieved of these responsibilities by the "unless otherwise required by law" language where the Constitution so plainly requires a different procedure and the constitutional provision is self-executing.
Thus, to avoid striking down 26 O.S. 2001 Supp.2006, §§ 13-101 and 13-102 as unconstitutional in the context of a "phase one" municipal charter election, we must conclude they are simply overridden by the provisions of the Oklahoma Constitution Article XVIII, Sections 3(a) and3(b).
Under such an interpretation, the municipality itself may conduct the election following the 30-day notice provisions of OKLA. CONST. art. XVIII, § 3(b) and 11 O.S. 2001, § 13-103. Alternatively, if the municipality and the county election board agree, we find no legal impediment to the county election board conducting such election as theagent of the municipality pursuant to a written agreement. See 74 O.S. 2001, §§ 1004[74-1004](A), 1008(A). The latter solution may prove to be more workable where mutually agreeable, since the county election board is accustomed to conducting elections and cities generally are not. But the precise arrangement or mechanism under which such a "phase one" charter election might be conducted will, in the end, be up to the governing body of the municipality.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Oklahoma Constitution, Article XVIII, Section 3(b) relating to special municipal elections for the selection of freeholders to draft a proposed charter for the municipality to become a charter or "home rule" city requires such election to be held not more than thirty (30) days after the adoption of an order of the municipal governing body calling the special election. This section of the Constitution is self-executing and thus may not be abrogated by the Legislature. State v. Scales, 97 P. 584, 587 (Okla. 1908).
 2. Title 11 O.S. 2001, § 13-103[11-13-103], also requiring an election to select freeholders within 30 days of the order calling the election, is consistent with the requirements of the Constitution for such elections.
 3. To avoid irreconcilable conflict between 26 O.S. 2001 Supp.2006, §§ 13-101 and 13-102 and Article XVIII, Section 3(b) of the Oklahoma Constitution, the aforementioned election statutes must be interpreted as permitting municipalities to conduct their own election for selection of freeholders, rather than county election boards. Thus, the 60-day notice to the election board provision of 26 O.S. Supp.2006, § 13-102 does not apply to such municipal freeholder elections.
 4. While not required, a municipality may enter into an agreement with a county election board to act as the agent of the municipality in conducting a special municipal election under OKLA. CONST. art. XVIII, § 3(b). See 74 O.S. 2001, §§ 1004[74-1004](A), 1008(A).
[1] See 1977 Okla. Sess. Laws ch. 256, § 13-103.
[2] See 26 O.S. 2001, § 2-101[26-2-101].
[3] See 26 O.S. 2001, § 2-110[26-2-110].
[4] Until 1975 municipal elections were held by municipal precinct election boards. "The regular precinct election board for and within cities and incorporated towns shall conduct all elections herein provided for." Okla. R.L. 1910, § 441; 11 O.S. 1971, § 27[11-27], repealedby 1974 Okla. Sess. Laws ch. 153, § 17-114. County election boards created voting precincts "whether in cities, towns or in the country, as in their judgment is best and proper." 26 O.S. 1971, § 25[26-25], repealed by 1974 Okla. Sess. Laws ch. 153, § 17-114. "By the 15th day of April, after their appointment, the county election board shall select an election board for each precinct in their respective counties." 26 O.S. 1971, § 31[26-31], repealed by 1974 Okla. Sess. Laws ch. 153, § 17-114.
[5] See 1974 Okla. Sess. Laws ch. 153, § 13-101.
[6] See 2004 Okla. Sess. Laws ch. 545, § 18;see also 2005 Okla. Sess. Laws ch. 224, § 2.
[7] See 1974 Okla. Sess. Laws ch. 153, § 3-101.
[8] Regular municipal elections provide for the election of officials to serve the particular municipal organization; see 11 O.S. 2001 Supp.2006, §§ 16-104, 16-201 — 16-213.
[9] See 1974 Okla. Sess. Laws ch. 153, § 13-102.
[10] See 1974 Okla. Sess. Laws ch. 153, § 13-102.
[11] See 1985 Okla. Sess. Laws ch. 193, § 4.
[12] See 1993 Okla. Sess. Laws ch. 316, § 10.
[13] See 1974 Okla. Sess. Laws ch. 153, § 13-102.
[14] See 1985 Okla. Sess. Laws ch. 193, § 4.
[15] See 1993 Okla. Sess. Laws ch. 316, § 10.
[16] Such factors could include printing ballots, programming voting machines, insuring election officials are available to oversee polling places, and allowing time for absentee ballots to be forwarded and returned, especially for overseas service men and women.
[19] See 2004 Okla. Sess. Laws ch. 545, § 18; 2005 Okla. Sess. Laws ch. 224, § 2.